Case 4:23-cv-01699 Document 99 Filed on 09/30/24 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
September 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER BRIDGES, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-1699 |
| § | |
| THE METHODIST HOSPITAL, *et al.*, § | |
| § | |
| Defendants. § | |
| § | |

## MEMORANDUM OPINION AND ORDER

This is a civil rights case brought under 42 U.S.C. § 1983 ("Section 1983") by over 100 healthcare professionals who were let go for refusing to inoculate themselves against COVID-19 in violation of their employers' mandatory immunization policies. Plaintiffs have sued their former employers ("the Methodist Hospital defendants" or "Methodist") and two Texas state officials ("the Government defendants"). (Dkt. 86 at pp. 25–26). Both sets of defendants have filed motions to dismiss. The defendants' motions (Dkt. 57; Dkt. 87) are **GRANTED IN PART AND DENIED AS MOOT IN PART**.[1]

For the reasons outlined in this opinion, all of Plaintiffs' claims under federal law (Counts I–IV and Count VIII of their live complaint) are **DISMISSED WITH PREJUDICE** under Federal Rule of Civil Procedure 12(b)(6). The Court declines to exercise supplemental jurisdiction over Plaintiffs' claims under Texas state law (Counts V–VII of their live complaint), and those claims are **REMANDED** to the 284th Judicial

---

[1] Defendants' motions to submit supplemental authority (Dkt. 90; Dkt. 91; Dkt. 96; Dkt. 98) are **GRANTED**. The Court has considered the submitted cases.

District Court of Montgomery County, Texas, where this case was originally filed and assigned case number 23-04-05209.

## FACTUAL AND PROCEDURAL BACKGROUND

In April of 2021, during the global COVID-19 pandemic, Methodist implemented a mandatory COVID-19 immunization policy for all of its employees and vendors. (Dkt. 86 at pp. 103–04). Plaintiffs refused to comply with the immunization policy and were let go or had their vendor privileges terminated. (Dkt. 86 at pp. 10–25, 92–93, 116–17).

Plaintiffs have now sued Methodist and the Government defendants under Section 1983 and various state-law causes of action. They ground their Section 1983 claims in their contention that "an individual has the federally secured right to refuse the administration of an Emergency Use Authorization (EUA) drug (e.g., Pfizer BioNTech COVID-19 Vaccine), biologic, or device without incurring a penalty or losing a benefit to which they are otherwise entitled." (Dkt. 86 at p. 27). By "Emergency Use Authorization drug" or "EUA drug," Plaintiffs mean a drug that has been introduced into interstate commerce under the authority of the "emergency use" provisions of 21 U.S.C. § 360bbb-3. 21 U.S.C. § 360bbb-3 allows the Secretary of Health and Human Services to authorize "an emergency use of a product" that is "intended for use in an actual or potential emergency" but "is not approved, licensed, or cleared for commercial distribution . . . ." *See* 21 U.S.C. § 360bbb-3(a). The emergency-use provisions may be, and in the case of the COVID pandemic were, invoked on the basis of a determination by the Secretary of Health and Human Services that there is a public health emergency involving a disease that may be attributable to a biological agent. *See* 21 U.S.C. § 360bbb-3(b). (Dkt. 86 at p. 7). Plaintiffs argue that there

is a Constitutionally relevant distinction between mandatory use of a "<u>licensed</u> vaccine" and mandatory use of an "EUA drug" like the COVID-19 vaccine. (Dkt. 86 at p. 27) (emphasis in Plaintiffs' complaint).

Plaintiffs originally filed this lawsuit in Texas state court, and Methodist removed it to this Court under the federal-question jurisdiction statute, 28 U.S.C. § 1331. (Dkt. 1). Plaintiffs have amended their pleading three times in this Court. (Dkt. 12; Dkt. 72; Dkt. 86).

## RULE 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim.

> However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.
>
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

Furthermore, "a complaint may be dismissed if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Medical Transportation Management, Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (quotation marks omitted).

When considering a motion to dismiss under Rule 12(b)(6), the Court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint; and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

## ANALYSIS

Since the COVID pandemic began, at least two lawsuits materially identical to this one have been filed in this District and dismissed on the pleadings. *See Bridges v. Houston Methodist Hospital*, 543 F. Supp. 3d 525 (S.D. Tex. 2021), *aff'd*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022); *Pearson v. Shriners Hospitals for Children*, No. 3:23-CV-387, 2024 WL 3022397 (S.D. Tex. June 7, 2024).[2] The Court similarly concludes that

---

[2] The cases from other circuits cited in this opinion also dealt with claims that were similar, and in most instances identical, to the ones brought by Plaintiffs.

Plaintiffs, despite amending their pleading multiple times, have failed to state a legally cognizable federal claim.

—*Section 1983*

Plaintiffs bring all but one[3] of their federal claims under Section 1983. (Dkt. 86 at pp. 117–21). Section 1983 does not create any substantive rights and instead was designed to provide a remedy for violations of federal statutory and Constitutional rights. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). "To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."[4] *Resident Council of Allen Parkway Village v. United States Department of Housing & Urban Development*, 980 F.2d 1043, 1050 (5th Cir. 1993).

If the source of the alleged right is a federal statute, then "[i]t is essential to a private enforcement action under § 1983 . . . that the federal statute in question *unambiguously* give rise to privately enforceable, substantive rights." *Johnson v. Housing Authority of Jefferson Parish*, 442 F.3d 356, 359 (5th Cir. 2006) (emphasis in *Johnson*); *see also*

---

[3] The one exception is a claim under 21 U.S.C. § 360bbb-3. As further discussed below, "courts have consistently held that [21 U.S.C. § 360bbb-3] provides no private right of action." *Kiss v. Best Buy Stores*, No. 3:22-CV-281, 2022 WL 17480936, at *8 (D. Or. Dec. 6, 2022) (collecting cases). Plaintiffs' claim under 21 U.S.C. § 360bbb-3 is dismissed for the same reasons as their Section 1983 claim premised on 21 U.S.C. § 360bbb-3.

[4] As the balance of this opinion explains, Plaintiffs' federal claims fail at step one, even assuming that this case involves state action. However, to be perfectly clear: The Court also concludes that Plaintiffs' federal claims fail because Plaintiffs "have failed to allege any . . . manner in which the termination of their employment may have constituted state action[.]" *Pearson v. Shriners Hospitals for Children*, No. 3:23-CV-387, 2024 WL 3022397, at *4 (S.D. Tex. June 7, 2024).

*Thurman*, 982 F.3d at 956 ("[F]ederal law must provide an unambiguously conferred right with an unmistakable focus on the benefitted class.") (quotation marks omitted). "The inquiry in this context is virtually the same as that involved in private rights of action implied directly from a federal statute rather than by way of § 1983." *Johnson*, 442 F.3d at 359. "It is presumed Congress did not intend to create a private enforceable right; the burden is on the plaintiff to show otherwise." *Southwestern Bell*, 529 F.3d at 260; *see also Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("[T]he plaintiff has the relatively heavy burden to show Congress intended private enforcement, and must overcome the presumption that Congress did not intend to create a private cause of action.").

"[I]n the end, very few statutes are held to confer rights enforceable under § 1983." *Johnson*, 442 F.3d at 360. Moreover, a Section 1983 claim may not be brought to enforce an administrative regulation, as "federal rights are created by Congress, not agencies of the Executive Branch[.]" *Thurman*, 982 F.3d at 955; *see also Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.").

Plaintiffs assert that the rights they seek to vindicate through Section 1983 stem from the following sources:

> 530. The CDC COVID Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR §46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

Dkt. 86 at pp. 117–21.

Plaintiffs also invoke 10 U.S.C. § 980; the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e ("the PREP Act"); and the Spending Clause. (Dkt. 86 at pp. 76, 121–22).

The Court concludes that Plaintiffs have failed to adequately plead a right secured by the Constitution or laws of the United States that they may enforce through Section 1983. To begin with, several of the sources of rights cited by Plaintiffs—namely, 45 C.F.R. § 46; the Belmont Report; Article VII of the ICCPR Treaty; the Federal Wide Assurance agreement; and the EUA Scope of Authorization letter—are neither statutes nor Constitutional provisions. Under *Thurman* and *Alexander*, those materials do not give rise to rights enforceable under Section 1983. The Court will address Plaintiffs' other purported sources of privately enforceable rights in turn.

    i.    <u>21 U.S.C. § 360bbb-3</u>

Plaintiffs first claim that they may use Section 1983 to enforce the informed-consent provisions of 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II). (Dkt. 86 at p. 118). The Court disagrees.

"[C]ourts have consistently held that [21 U.S.C. § 360bbb-3] provides no private right of action." *Kiss v. Best Buy Stores*, No. 3:22-CV-281, 2022 WL 17480936, at *8 (D. Or. Dec. 6, 2022) (collecting cases); *see also Bridges*, 543 F. Supp. 3d at 527. Indeed, the Federal Food, Drug, and Cosmetic Act ("FDCA"), of which 21 U.S.C. § 360bbb-3 is a part, "says that its requirements may only be enforced by the United States government." *Markland v. Insys Therapeutics, Inc.*, 758 Fed. App'x 777, 779 (11th Cir. 2018) (citing 21 U.S.C. § 337(a)); *see also Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 817 (1986) (holding that private actors have no federal cause of action for a violation of the FDCA); *Scott v. Pfizer Inc.*, 182 Fed. App'x 312, 315 (5th Cir. 2006) ("Nor has [the plaintiff] shown that . . . the Food, Drug, and Cosmetic Act . . . create[s] a private right of action."). Plaintiffs have failed to rebut the presumption that Congress did not intend to create a privately enforceable right when it enacted the informed-consent provisions of 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II).

Even if the informed-consent provisions of 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II) create a privately enforceable right, Plaintiffs' allegations fall outside of its scope. The informed-consent provisions "address[] the interaction between the medical provider and the person receiving the vaccine, not the interaction between an employer and an employee receiving a vaccine." *Norris v. Stanley*, 73 F.4th 431, 438 (6th Cir. 2023). "[A]s other courts have held, those conditions of informed consent only relate to those who 'carr[y] out any activity for which the authorization is issued,' which are the medical providers who administer the vaccine, not those who issue vaccine mandates." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1256 (D. Or. 2021); *see also Valdez v. Grisham*, 559 F. Supp. 3d 1161,

1171–72 (D.N.M. 2021), *aff'd*, No. 21-2105, 2022 WL 2129071 (10th Cir. June 14, 2022) ("[The informed-consent] provisions nowhere prevent the state, or any other entity, from requiring certain individuals to be vaccinated against COVID-19. . . . This informed consent requirement only applies to medical providers [who are] directly administering the vaccine[.]"); *Norris*, 73 F.4th at 438 ("The statute is meant to ensure patients' consent to the pharmaceutical they are receiving, but this does not mean that [Michigan State University] cannot require vaccination as a term of employment."); *Pearson*, 2024 WL 3022397 at *3 ("Shriners correctly asserts that the plaintiffs' 'right to refuse' the vaccine never came into being because none of the Shriners parties ever actually administered the COVID-19 vaccination to any of the plaintiffs.") (brackets and some quotation marks omitted). Plaintiffs do not allege that any defendant directly administered the vaccine to them, so their claims against Defendants fall outside of the reach of the informed-consent provisions of 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II)—even assuming, again, that Plaintiffs could root a Section 1983 action in the informed-consent provisions in the first place.

    ii.    <u>The PREP Act</u>

Plaintiffs also invoke the PREP Act. The Court concludes that the PREP Act cannot form the basis for Plaintiffs' Section 1983 claims.

The PREP Act "shields covered persons, such as pharmacies and drug manufacturers, from suits and liability during a public-health emergency." *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 243 (5th Cir. 2022) (quotation marks omitted). If the liability shield applies, "the sole remedy is compensation from a fund administered by the Secretary" of Health and Human Services. *Id.* (quotation marks omitted). The

compensation is exclusively determined by an administrative process. *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 586 (5th Cir. 2022). The single exception to the PREP Act's liability shield is both substantively and procedurally narrow: "A claimant may sue a covered person for death or serious physical injury proximately caused by that person's willful misconduct[,]" but that claim "may proceed only in the federal district court for the District of Columbia." *Manyweather*, 40 F.4th at 243. Moreover, claimants who fall under the willful-misconduct exception typically still must exhaust certain administrative remedies before going to court. *Mitchell*, 28 F.4th at 586.

The Court concludes that the PREP Act is not one of the "very few statutes" that "confer rights enforceable under § 1983." *See Johnson*, 442 F.3d at 360. "Indeed, courts uniformly recognize that, with one exception, the PREP Act does not create an enforceable right, but creates *immunity* against a potential action arising from an injury during the administration of a vaccine." *Sweeney v. University of Colorado Hospital Authority*, No. 23-CV-2451, 2024 WL 3713835, at *8 (D. Colo. July 12, 2024) (emphasis in *Sweeney*); *see also Maney v. Brown*, 91 F.4th 1296, 1303 (9th Cir. 2024) ("Congress intended to expressly immunize covered persons from § 1983 actions for claims covered by the [PREP] Act, even if those claims are federal constitutional claims."). The PREP Act not only sets out a carefully constructed and exclusive remedial scheme but explicitly states the limited circumstances under which lawsuits may proceed against covered persons, right down to specifying the one venue (which is not this Court) in which those lawsuits must be filed. If anything, such a comprehensive and exclusive scheme evinces a Congressional intent to preclude Section 1983 claims based on the PREP Act, not facilitate them. *See*

*Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 252 (2009) ("If Congress intended a statute's remedial scheme to be the exclusive avenue through which a plaintiff may assert the claims, the § 1983 claims are precluded.") (brackets, quotation marks, and citation omitted). Accordingly, the PREP Act cannot form the basis for Plaintiffs' Section 1983 claims.

### iii. 10 U.S.C. § 980

Plaintiffs also invoke 10 U.S.C. § 980. The Court concludes that 10 U.S.C. § 980 provides no basis for relief on the facts alleged by Plaintiffs.

10 U.S.C. § 980 provides that:

[f]unds appropriated to the Department of Defense may not be used for research involving a human being as an experimental subject unless . . . (1) the informed consent of the subject is obtained in advance; or (2) in the case of research intended to be beneficial to the subject, the informed consent of the subject or a legal representative of the subject is obtained in advance.
10 U.S.C. § 980.

"10 U.S.C. § 980 does not contain clear and unambiguous 'rights-creating' or 'individual-centric' language demonstrating Congressional intent to create an enforceable right under § 1983." *Sweeney*, 2024 WL 3713835 at *9. Accordingly, 10 U.S.C. § 980, like the PREP Act and the informed-consent provisions of 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II), cannot form the basis of a Section 1983 claim. Even if it could, Plaintiffs do not allege that Defendants used funds appropriated to the Department of Defense to experiment on them without their informed consent, so their claims based on 10 U.S.C. § 980 would still fail. *Boysen v. PeaceHealth*, No. 6:23-CV-1229, 2024 WL 3888682, at *7 (D. Or. Aug. 19, 2024) ("Plaintiffs have failed to allege sufficient facts from which they

could obtain relief from state Defendants based on this statute. There is no allegation that state Defendants expended Department of Defense funds or were obligated to inform Plaintiffs of information, but failed provide such information.").

        iv.    <u>The Spending Clause</u>

Plaintiffs also invoke the Constitution's Spending Clause. The Court concludes that Plaintiffs have failed to state a cognizable claim under this provision.

The Spending Clause "empowers Congress to 'lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987). "Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *Id.* (quotation marks omitted). "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002). The Supreme Court has "made clear that unless Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." *Id.* (quotation marks and brackets omitted). An instance in which Spending Clause legislation creates "§ 1983-enforceable rights," in short, is an "atypical case[.]" *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 183 (2023).

In support of their Spending Clause claim, Plaintiffs cite to 21 U.S.C. § 360bbb-3; 45 C.F.R. § 46.122; and 10 U.S.C. § 980. As the Court previously discussed, 21 U.S.C. § 360bbb-3 and 10 U.S.C. § 980 do not manifest an unambiguous Congressional intent to confer individual rights; and 45 C.F.R. § 46.122, whatever it may say about individual rights, is an administrative regulation, not a statute enacted pursuant to Congress's spending power. *See Alexander*, 532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). Accordingly, Plaintiffs have not pointed to a valid source of a claim under Section 1983 based on the Spending Clause. *Sweeney*, 2024 WL 3713835 at *16–17 (dismissing claims under the Spending Clause based on 21 U.S.C. § 360bbb-3; 45 C.F.R. § 46.122; and 10 U.S.C. § 980).

      v.    <u>Procedural due process</u>

Plaintiffs also contend that their rights under the procedural due process component of the Fourteenth Amendment's Due Process Clause were violated. (Dkt. 86 at p. 93). The Court concludes that Plaintiffs have failed to state a cognizable claim under this theory.

Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "By requiring the government to follow appropriate procedures when its agents decide to deprive any person of life, liberty, or property, the Due Process Clause promotes fairness in such decisions." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quotation marks omitted). However, "[t]he procedural component of the Due Process Clause does not

protect everything that might be described as a 'benefit': To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005) (some quotation marks omitted). "Such entitlements are, of course, not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (ellipsis and quotation marks omitted).

Plaintiffs assert that they have a protected entitlement in their "living wages and careers[.]" (Dkt. 86 at p. 93). State law controls the analysis of whether Plaintiffs have a property interest in their employment sufficient to entitle them to due process protection. *McDonald v. City of Corinth, Texas*, 102 F.3d 152, 155 (5th Cir. 1996); *see also Muncy v. City of Dallas, Texas*, 335 F.3d 394, 398 (5th Cir. 2003) ("[A] property interest is not incidental to public employment, instead it must be created by an independent source, such as state law."). "It is well-settled that Texas is an at-will employment state and that, absent an express agreement to the contrary, employment may be terminated at any time by either party with or without cause." *Id.* at 156. An at-will employee is not entitled to procedural due process in connection with his termination. *Id*. at 155; *see also Muncy*, 335 F.3d at 397–98 & n.1. To state a due process claim, then, "an employee must show that the at-will presumption has been altered." *Zeng v. Texas Tech University Health Science Center at El Paso*, 836 Fed. App'x 203, 211 (5th Cir. 2020). There are two ways in which the at-will relationship may be altered: (1) by contract; and (2) by rules or policies that "specifically

and expressly curtail[] the employer's right to terminate the employee." *Muncy*, 335 F.3d at 398; *McDonald*, 102 F.3d at 156.

Plaintiffs' complaint does not allege any facts rebutting the presumption that their employment was at-will or showing that their at-will relationship with Methodist was altered. Accordingly, they were not entitled to procedural due process in connection with their terminations.

> vi. <u>Substantive due process</u>

Plaintiffs next contend that their rights under the substantive due process component of the Fourteenth Amendment's Due Process Clause were violated. (Dkt. 86 at p. 76). Substantive due process, unlike procedural due process, "bar[s] certain government actions regardless of the fairness of the procedures used to implement them[.]" *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Plaintiffs' allegations fail to state a substantive-due-process claim.

When a plaintiff proceeding under the substantive due process component of the Due Process Clause challenges legislative or quasi-legislative action that applies broadly and does not implicate a fundamental right, the plaintiff must show that the governmental action is not "rationally related to a legitimate government interest." *Reyes v. North Texas Tollway Authority, (NTTA)*, 861 F.3d 558, 561–63 (5th Cir. 2017). "The interest the government asserts to show rationality need not be the actual or proven interest, as long as there is a connection between the policy and a conceivable interest." *Id*. at 563 (quotation marks omitted). If the relationship between the challenged governmental action and a legitimate government interest "is at least debatable, there is no substantive due process

violation." *Id*. (quotation marks omitted). Rational basis review is "notoriously deferential" to the government. *Id*. at 561–62.

Plaintiffs do not have a fundamental right to refuse vaccination. *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *see also Bridges*, 543 F. Supp. 3d at 527 & n.3; *Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Or. 2021) (collecting cases) ("In the context of COVID-19, courts across the country have concluded that *Jacobson* established that there is no fundamental right to refuse vaccination."). Accordingly, Plaintiffs have to satisfy the rational-basis standard.[5] Their allegations fail to do so.

"Applied to the present case, the Court has no trouble concluding that the vaccine mandates are rationally related to a legitimate state interest." *Brown*, 567 F. Supp. 3d at 1227. As Judge Hughes stated in dismissing a similar case against Methodist, Methodist implemented a mandatory COVID-19 immunization policy in an effort "to do their business of saving lives" without spreading the COVID-19 virus and "to keep staff, patients, and their families safer." *Bridges*, 543 F. Supp. 3d at 528. Those are legitimate interests, and the immunization policy is rationally related to them. Plaintiffs have not stated a cognizable substantive-due-process claim.

---

[5] When a plaintiff challenges individualized executive action as opposed to legislative or quasi-legislative action, the plaintiff can only establish a substantive due process violation by showing that "the executive action . . . can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quotation marks omitted); *see, e.g., Cripps v. Louisiana Department of Agriculture and Forestry*, 819 F.3d 221, 232–33 (5th Cir. 2016) (applying the shocks-the-conscience standard to a state commission's decision to deny a professional license to the plaintiff). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense[.]" *Lewis*, 523 U.S. at 846 (quotation marks omitted). If the shocks-the-conscience standard were applicable here, Plaintiffs' allegations would fail to meet that standard as well.

      vii.    Equal Protection

Finally, Plaintiffs contend that their rights under the Fourteenth Amendment's Equal Protection Clause were violated. (Dkt. 86 at p. 76). Their allegations fail to establish such a violation.

The rational-basis standard discussed above applies to Plaintiffs' equal-protection claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440. Heightened standards of review apply when suspect classifications like race, gender, or national origin are implicated or when legislation impinges on fundamental Constitutional rights. *Id.*

"As with substantive due process, courts have routinely rejected the argument that vaccine mandates will trigger heightened scrutiny under the Equal Protection Clause and have instead applied rational basis review." *Brown*, 567 F. Supp. 3d at 1227. Applying the rational-basis standard to the immunization policy that Plaintiffs challenge, the Court again "has no trouble discerning a legitimate state interest in slowing the spread of COVID-19 and the Court concludes that the vaccine mandates are rationally related to furthering that interest." *Id.* at 1228. Accordingly, Plaintiffs' allegations are insufficient to establish a viable equal-protection claim.

—*Claims under Texas state law*

Having dismissed all federal causes of action in this case, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' claims under Texas state law and will deny as moot Defendants' motions to dismiss those claims. Federal district courts have the discretion to decline to exercise supplemental jurisdiction over state-law claims; that discretion is guided by the statutory factors set forth in 28 U.S.C. § 1367(c) and the common-law factors of judicial economy, convenience, fairness, and comity. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

The factors listed in 28 U.S.C. § 1367(c) are:

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Mendoza*, 532 F.3d at 346. The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

Having considered the statutory and common-law factors, the Court will follow the general rule, decline to exercise supplemental jurisdiction over Plaintiffs' claims under Texas law, and remand those claims to state court.

## CONCLUSION

The defendants' motions to dismiss (Dkt. 57; Dkt. 87) are **GRANTED IN PART AND DENIED AS MOOT IN PART**. All of Plaintiffs' claims under federal law (Counts I–IV and Count VIII of their live complaint) are **DISMISSED WITH PREJUDICE** under Federal Rule of Civil Procedure 12(b)(6). The Court declines to exercise supplemental jurisdiction over Plaintiffs' claims under Texas state law (Counts V–VII of their live complaint), and those claims are **REMANDED** to the 284th Judicial District Court of Montgomery County, Texas, where this case was originally filed and assigned case number 23-04-05209.

The Clerk is directed to provide a copy of this order to the parties. The Clerk is further directed to send a certified copy of this order via certified mail, return receipt requested, to the District Clerk of Montgomery County, Texas and the Clerk of the 284th Judicial District Court of Montgomery County, Texas.

SIGNED at Houston, Texas on September 30, 2024.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE