# United States Court of Appeals
# for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

*July 08, 2025*

Nathan Ochsner, Clerk of Court

No. 24-20483

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2025

Lyle W. Cayce
Clerk

JENNIFER BRIDGES; BREANN EMSHOFF; AMANDA LOFTON; BRETT COOK; STEFANIE MARTINEZ; ET AL.,

*Plaintiffs—Appellants,*

*versus*

THE METHODIST HOSPITAL, *doing business as* THE METHODIST HOSPITAL SYSTEM; HOUSTON METHODIST THE WOODLANDS HOSPITAL; METHODIST HEALTH CENTERS, *doing business as* HOUSTON METHODIST BAYTOWN HOSPITAL, *doing business as* HOUSTON METHODIST SUGAR LAND HOSPITAL, *doing business as* HOUSTON METHODIST THE WOODLANDS HOSPITAL, *doing business as* HOUSTON METHODIST WILLOWBROOK HOSPITAL; MARC L. BOOM; ROBERT A. PHILLIPS; ET AL.,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-1699

Before HIGGINBOTHAM, JONES, and SOUTHWICK, *Circuit Judges.*

PER CURIAM:[*]

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-20483

Plaintiff-Appellants (the "Former Employees") are over 100 healthcare professionals terminated from Houston Methodist for refusing COVID-19 vaccination. They sued the hospital, its agents, and the Chairman of the Texas Workforce Commission, for violating their alleged right to refuse vaccination. They asserted various 42 U.S.C. § 1983 claims, a claim directly under the statute permitting the vaccine's Emergency Use Authorization, and various Texas state-law claims. The district court dismissed the Former Employees' federal-law claims, with prejudice. We AFFIRM.

## I.

In 2020, responding to the COVID-19 pandemic, the U.S. Government established the CDC COVID-19 Vaccination Program ("CDC Program"), which was "designed to distribute and administer federally owned [COVID-19 vaccines] to individuals . . . under a nationally declared emergency."[1] To administer the program, the federal government purchased all available COVID-19 vaccines and authorized them for use under the emergency-use provisions of 21 U.S.C. §360bbb-3 (the "EUA Statute"), as the Food and Drug Administration ("FDA") had not yet fully approved the vaccines for commercial distribution.

The CDC Program was implemented in coordination with state and local governments, to "ensure its [COVID-19 vaccine] distribution and administration [was] consistent with the terms of . . . [the] CDC's COVID-19 Vaccination Program." Vaccine providers administering the COVID-19 vaccines to patients were required to comply with similar requirements,

---

[1] As this case comes in an appeal from a motion to dismiss, we draw all facts from the Former Employees' second amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

"including but not limited to requirements in any EUA that covers COVID-19 Vaccine[s]." For example, before administering the vaccine, providers had to "provide an approved [EUA] fact sheet or vaccine information statement . . . to each vaccine recipient[.]" As required under the EUA Statute, those fact sheets contained information that informed patients "of the option to accept or refuse administration of the [vaccine.]"[2]

Houston Methodist, a network of private, nonprofit hospitals, was one such vaccine provider.[3] In April 2021, Houston Methodist adopted a companywide policy requiring its employees to be vaccinated against COVID-19, subject to religious and medical exemptions. This policy did not require employees and contractors to receive the vaccine directly from Houston Methodist. Houston Methodist informed employees about the policy, and gave them notice that they would be placed on unpaid suspension, then terminated, if they did not comply with its vaccination requirement.

The employees refusing to comply with the immunization policy were terminated or constructively terminated.[4] None of the Former Employees pleaded that they requested an exemption that was denied. And none of the

---

[2] *See* 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).

[3] Defendant-Appellees include The Methodist Hospital, Methodist Health Centers, and their affiliated entities and individuals. We refer to them collectively as "Houston Methodist."

[4] Most of the 112 Plaintiff-Appellants are former employees of Houston Methodist who were terminated after refusing to comply with the hospital's COVID-19 vaccination policy. Of the 112 Plaintiff-Appellants, five received the vaccine and are still employed by Houston Methodist. And four of the Plaintiff-Appellants were contractors (three vendors and a physician) who allege that their respective privileges were terminated after refusing vaccination. As the vast majority of the Plaintiff-Appellants are former employees, and because the Plaintiff-Appellants make no arguments specific to physicians, vendors, or other contractors, nor to employees who received the vaccine, we refer to them collectively as the "Former Employees," and focus our analysis on the claims of those Plaintiff-Appellants who were employees of Houston Methodist during the pertinent time period.

No. 24-20483

Former Employees "allege that any defendant directly administered the vaccine to them[.]"

## II.

In April 2023, the Former Employees filed suit in Montgomery County, Texas, and Houston Methodist removed the suit to federal court.[5] The Former Employees asserted claims against Houston Methodist,[6] and the Chairman of the Texas Workforce Commission ("TWC")[7] under 42 U.S.C.

---

[5] 72 of the Former Employees first sued Houston Methodist over its COVID-19 vaccination employment policy in May 2021. *See Bridges v. Methodist Hosp.*, No. 21-20311, 2022 WL 2116213 (5th Cir. June 13, 2022) (*Bridges I*). The district court in *Bridges I* dismissed the plaintiffs' claims under FED. R. CIV. P. 12(b)(6) for failure to state a claim, and this Court affirmed that order. *Id.* Furthermore, in December 2022, 19 of the Former Employees (including some who were also plaintiffs in *Bridges I*) filed federal lawsuits against Houston Methodist in the Southern District of Texas alleging religious discrimination claims relating to the hospital's COVID-19 vaccination employment policy. These lawsuits were subsequently consolidated into a single action. On appeal, Houston Methodist argues that res judicata bars claims by the Former Employees who brought related claims in these prior suits. But because we find that the claims fail under § 1983 and the EUA Statute, we need not consider this argument further.

[6] In its initial state-court suit, the Former Employees named only two hospital entities as defendants: The Methodist Hospital and Houston Methodist The Woodlands Hospital. Upon removal to federal court, the Former Employees amended their initial complaint, adding multiple Houston Methodist subsidiary entities and affiliated individuals to their lawsuit, as well as Texas state government defendants.

[7] The Former Employees amended their complaint twice. In their Second Amended Complaint, the Former Employees amended their pleadings against Texas state government defendants. Whereas their First Amended Complaint listed the Texas Health and Human Services Commission ("HHSC"), TWC, and Texas Medical Board, their Second Amended Complaint dropped the claims against the state agencies and proceeded only against Cecile Erwin Young—Executive Commissioner of the HHSC—and Bryan Daniel—Chairman and Commissioner Representing the Public of the TWC—in their official and individual capacities. The Former Employees do not appeal the district court's dismissal of their claims against Young and as such, have waived these claims. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("[W]aiver is the 'intentional

No. 24-20483

§ 1983, the EUA Statute, and Texas state law. Specifically, the Former Employees argued that Houston Methodist—allegedly a state actor as a COVID-19 vaccine provider under the CDC Program—violated their right to refuse the vaccine without consequences through its mandatory vaccination policy. They also argued that the Chairman of the TWC, for his part, allegedly violated the same right by denying unemployment benefits to certain Former Employees, and sought declaratory judgment saying as much.

All defendants filed motions to dismiss. The district court agreed with the defendants and dismissed all federal claims against Houston Methodist and Daniel. It also declined to exercise supplemental jurisdiction over the Former Employees' state law claims and remanded those to Texas state court.[8] The Former Employees timely appealed.

## III.

We review orders granting Rule 12(b)(6) motions to dismiss for failure to state a claim *de novo*.[9] "We accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[10] And, a district court's order to dismiss with prejudice without offering leave to amend pleadings is reviewed for abuse of discretion.[11]

## IV.

The Former Employees bring claims against Houston Methodist

---

relinquishment or abandonment of a known right.'") (citation omitted). The Former Employees later corrected their Second Amended Complaint.

[8] The Former Employees do not appeal the district court's remand of their state-law claims. Thus, we address them no further. *See Rollins*, 8 F.4th at 397.

[9] *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021).

[10] *Id.* (citation omitted).

[11] *St. Germain v. Howard*, 556 F.3d 261, 262 (5th Cir. 2009) (per curiam).

No. 24-20483

under § 1983 and the EUA Statute. Both sets of claims fail.

## A.

Turning to the § 1983 claims first, the Former Employees allege violations of their (1) substantive due process right to refuse a vaccine; (2) equal protection right not to be classified on the basis of vaccination status; (3) procedural due process right to a hearing prior to depriving them of their right to refuse a vaccine without penalty; and (4) right to refuse a vaccine under the Spending Clause of the Constitution, and various statutes, treaties, and administrative actions.[12]

### 1.

"[T]o state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."[13]

Under the state action prong, "[a] private entity can qualify as a state actor in a few limited circumstances."[14] "Those 'include[e], for example (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action,

---

[12] The Former Employees also argue that the district court "incorrectly treated the mandated drugs as approved vaccines when they were legally classified as INDs undergoing clinical trials." Not so: the district court, in its order, acknowledged that the COVID-19 vaccines were administered under an EUA and were "not approved, licensed, or cleared for commercial distribution." Furthermore, as cited in the Former Employees' own pleadings, the U.S. Government itself described the COVID-19 vaccines as "vaccine[s]" under the EUA Statute.

[13] *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993) (citation omitted).

[14] *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 443 (5th Cir. 2025) (citing *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019)).

No. 24-20483

or (iii) when the government acts jointly with the private entity.'"[15] "They also include (iv) 'when the private entity is entwined with governmental policies, or when government is entwined in its management or control.'"[16] "Deciding whether a deprivation of a protected right falls within one of these categories 'begins by identifying the specific conduct of which the plaintiff complains[,]'"[17] as "a defendant may be a state actor for some purposes but not for others."[18]

## 2.

The Former Employees' claims, however, are foreclosed by this Court's recent decision in *Pearson v. Shriners Hosps. for Child., Inc.*[19] There, as here, former employees of a private hospital sued their employer for violating their alleged right to refuse the COVID-19 vaccine, asserting various § 1983 claims.[20] This Court in *Pearson* held that the § 1983 claims failed because the relevant conduct at issue—the hospital's adoption and enforcement of its mandatory vaccination policy—was "not state action."[21] In doing so, it explained that a private organization's vaccination policy is not a "power[] traditionally exclusively reserved to the State."[22] It also found that the evidence alleged failed to show that: (1) the State compelled the

---

[15] *Id.* at 443-44 (citing *Manhattan Cmty. Access Corp.*, 587 U.S. at 809).

[16] *Id.* at 444 (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

[17] *Id.* (citing *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005)).

[18] *Id.* (citing *Cornish*, 402 F.3d at 550).

[19] *Id.* at 433.

[20] *Id.* at 439.

[21] *Id.* at 444.

[22] *Id.* (citation omitted).

No. 24-20483

hospital to adopt the policy; (2) the policy constituted joint action between the State and the hospital; and (3) the State was "entwined" with the hospital's decision to adopt the policy.[23]

Here, the Former Employees' § 1983 claims fail for the same reasons. Though the Former Employees assert that "state action" can be discerned from Houston Methodist's interactions with "federal and state authority through the CDC Program," the argument conflates Houston Methodist's role as their private employer with its role as a vaccine provider to the general public. The "gravamen of the [Former Employees'] complaint" centers on Houston Methodist's mandatory vaccination policy,[24] and—as in *Pearson*— the Former Employees do not allege any evidence that this policy implicated Houston Methodist's separate role as a vaccine provider.[25]

## B.

The Former Employees also allege that the EUA Statute gives rise to an implied private right of action independent of § 1983, which Houston Methodist violated. It does not. "The EUA Statute permits the HHS Secretary to authorize use of a 'drug, device, or biological product intended for [such] use in an actual or potential emergency.'"[26] "It also requires the Secretary to establish '[a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product.'"[27]

---

[23] *Id.*

[24] *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982).

[25] *See Pearson*, 133 F.4th at 444.

[26] *Id.* (citing 21 U.S.C. § 360bbb-3(a)(1)).

[27] *Id.* (citing 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III)).

No. 24-20483

But the Former Employees' reliance on the EUA Statute is misplaced. As this Court stated in *Pearson*, the provision of the EUA Statute at issue expressly limits its scope to regulating vaccine providers, and "'does not apply at all' to those acting in their role as 'private employers like the hospital in this case[.]'"[28] This reasoning directly applies here as well. Houston Methodist did not violate the Former Employees' rights under the EUA Statute, and we need not address whether that statute creates an implied right of action. The district court did not err in dismissing their claim.

## V.

The Former Employees raise a separate claim against Daniel, the Chairman of the TWC. They allege that Daniel denied Former Employee Bob Nevans' unemployment benefits based on a finding that Nevans violated Houston Methodist's employment policy.[29] They assert that in November 2022, the TWC, enforcing Texas's at-will employment doctrine, sent Nevans a final decision determining he had been overpaid unemployment benefits, and requiring that he repay the benefits previously received. The Former Employees further assert that Daniel "breached the duties of his office, breached his oath of office that he would be faithful to the Constitution, and deprived [Nevans] of [his] rights under Fifth and Fourteenth Amendments of the United States Constitution, as well as rights conferred by federal statutes."

The Former Employees seek a declaratory judgment against Daniel that: (1) the denial of unemployment benefits for those terminated from

---

[28] *Id.* (citation omitted).

[29] Though the Former Employees—in their amended complaint—mentioned several plaintiffs with alleged grievances against Daniel, they mention only Nevans' claims on appeal. Because the Former Employees do not raise other claims against Daniel, we focus only on Nevans' arguments on appeal. *See Rollins*, 8 F.4th at 397.

No. 24-20483

employment after refusing the COVID-19 vaccine "is unlawful" and violates the Fifth and Fourteenth Amendments; and (2) Daniel, as Chairman of the TWC, "is aware" of this practice, "has not discontinued this practice, and . . . consciously allows it to proceed."

We find that the Former Employees have forfeited their claim as to Daniel. "When a party pursues an argument on appeal but does not analyze relevant legal authority, the party abandons that argument."[30] The Former Employees only cursorily mention their arguments against Daniel in their appellate briefing and fail to provide both legal and factual analysis to support their claims, which are distinct from their claims against Houston Methodist. First, the Former Employees do not analyze whether sovereign immunity applies, which may bar the claims. And second, while the Former Employees cite to three cases throughout their arguments against Daniel, they do not apply these cases to the particular facts at hand and fail to substantiate their claims. We thus need not address this challenge.

## VI.

In the alternative, the Former Employees assert that the district court abused its discretion when it denied leave to amend their Second Amended Complaint under FED. R. CIV. P. 15(a). It did not. The Former Employees had several opportunities to "refine their claims and clarify their legal arguments to address the district court's concerns." As the district court noted in its dismissal order, the Former Employees had already "amend[ed]

---

[30] *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 414 (5th Cir. 2021). *See also Rollins*, 8 F. 4th at 397 (stating that a party forfeits an argument by "failing to adequately brief the argument on appeal[.]"); *United States v. Green*, 964 F.2d 365, 371 (5th Cir. 1992) (noting that the failure to provide legal or factual analysis constitutes waiver of an issue); *Willis v. Cleco Corp.*, 749 F.3d 314, 318 n.3 (5th Cir. 2014) (disregarding an argument "giv[ing] scant, if not conclusory attention to the record: citations are minimal, and legal analysis relating facts to the law is largely absent").

No. 24-20483

their pleading multiple times."[31] And the Former Employees, on appeal, fail to specify any grounds for amending.[32] The district court correctly dismissed the Former Employees' claims with prejudice.

## VII.

For the foregoing reasons, we AFFIRM the district court's judgment dismissing with prejudice the Former Employees' federal-law claims.

---

[31] *See St. Germain*, 556 F.3d at 264 (holding that the district court did not err in denying appellants the opportunity to amend their complaint because appellants had several opportunities to state their best case). On appeal, the Former Employees appear to argue that they should at least be given leave to amend their claims against Houston Methodist, as their Second Amended Complaint only amended claims against state actors and their claims against Houston Methodist were not amended. We note, however, that the Former Employees never asked the district court for leave to amend their claims to avoid dismissal under Rule 12(b)(6), by either a formal motion under Rule 15(a) or in their opposition to Houston Methodist's Rule 12(b)(6) motion.

[32] *See U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330-31 (5th Cir. 2003).